IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN McTERNAN, | : | No. 4:06-cv-2132 |
| | : | |
| Plaintiffs, | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| CITY OF YORK, *et. al*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

**May 11, 2007**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("the Motion")(doc. 9) filed by Defendants City of York, York Mayor John S. Brenner, York Police Commissioner Mark L. Whitman, and York Sergeant Richard Barth on January 8, 2007.

For the reason that follow, the Motion shall be granted in part and denied in part.

**FACTUAL BACKGROUND/PROCEDURAL HISTORY**:

Plaintiff John McTernan ("Plaintiff" or "McTernan") is a Christian, pro-life advocate who periodically appears at the Planned Parenthood of Central

1

Pennsylvania facility in the City of York to demonstrate his anti-abortion views. (Complaint, ¶¶8-14). Plaintiff avers that there have been no physical confrontations or altercations between the anti-abortion activists and Planned Parenthood personnel at the facility in recent years. (Complaint, ¶15). The complaint asserts that despite the lack of violence, the City of York, its mayor and Police Chief have routinely dispatched police officers to Planned Parenthood at the request of the facility to serve as private security guards for Planned Parenthood. Plaintiff believes and therefore avers that Planned Parenthood pays for the police officers and directs their actions. (Complaint, ¶16).

On June 19, 2005, Plaintiff was present at Planned Parenthood with information to give to pregnant women attending the facility. (Complaint, ¶¶17-18). On that date, Plaintiff alleges that a motor vehicle turned onto Rose Alley at a high rate of speed and then accelerated as it traveled down the alley. Plaintiff alleges that as the vehicle approached him and his fellow advocates, the vehicle intentionally swerved toward McTernan, passing him at a close distance. (Complaint, ¶19). McTernan alleges that this occurred while Sergeant Barth was watching.

Following the incident, Plaintiff alleges that he immediately ran to Sergeant Barth and informed him of the criminal conduct that had just occurred in front of him and had been directed toward Plaintiff. Plaintiff alleges that Sergeant Barth

2

indicated that the incident was "so noted" but otherwise took no action as a law enforcement officer. Plaintiff then went to York Police Headquarters in an attempt to file charges, but was allegedly told by the desk sergeant that he was a "trouble maker" and that if the Plaintiff did not like his response, he should hire an attorney. Plaintiff avers that no action was ever taken against the driver by the York City Police Department. By letter dated July 15, 2005, Plaintiff notified Defendant Mayor Brenner of the incident and the police response to it. (Complaint, ¶¶21-25).

On September 28, 2005, Plaintiff and others were assembled at the Planned Parenthood facility in York and Sergeant Barth was on duty at that location. (Complaint, ¶¶26-27). Plaintiff alleges that Sergeant Barth told him that he and others were not allowed to stand in Rose Alley, but that Planned Parenthood staff were allowed to stand in Rose Alley. (Complaint, ¶28). Sergeant Barth also told Plaintiff that he could walk in the alley but that he had to do so in the "right way." Plaintiff alleges that when he inquired what the "right way" was, Sergeant Barth refused to tell him, although he did say that "English walking" was not permitted. When asked, Sergeant Barth allegedly refused to define what "English walking" was. (Complaint, ¶29). Thereafter, Plaintiff walked down the alley and back to Sergeant Barth. When Plaintiff walked back down the alley, Sergeant Barth told him that if he walked in the alley again, he would be arrested. (Complaint, ¶¶30-

31). Plaintiff alleges that he did not interfere with any vehicular traffic, however, because of Sergeant Barth's threats, he did not enter the alley again on that day. (Complaint, ¶32).

Plaintiff initiated this civil action by filing a complaint (doc. 1) on October 31, 2006 seeking nominal, compensatory and punitive damages; a declaratory judgment; and temporary and permanent injunctive relief. The complaint attempts to assert civil rights claims pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's First Amendment rights to free exercise of religion (Count I); peaceful assembly (Count II); and free speech (Count III). The complaint names the City of York, Brenner, Whitman and Barth as Defendants. Defendants Brenner and Whitman are named in their official capacities only, and Defendant Barth is being sued in his official and individual capacities.

On January 8, 2007, the Defendants filed the instant Motion. The Motion has been fully briefed by the parties and is therefore ripe for our review.

**STANDARD OF REVIEW**:

In considering a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a court must accept the veracity of a plaintiff's allegations. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), our Court of Appeals for

the Third Circuit added that in considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." Furthermore, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also District Council 47 v. Bradley, 795 F.2d5 310 (3d Cir. 1986).

**DISCUSSION**:

### A.    Merger of Claims

At the outset we note that the claims against Defendants Brenner and Whitman in their official capacities shall be dismissed because they merge, as a matter of law, with the §1983 claims asserted against the Defendant City of York, because suits against a municipal employee in his official capacity is in reality a suit against a government entity that the employee represents. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Courts within the Third Circuit have ruled that claims against an official in his or her official capacity are redundant with the claims against a municipality that employs the official and should therefore be dismissed. Crane v. Cumberland County, PA, 2000 U.S. Dist Lexis 22489, *3 (M.D.Pa. June 16,

2000), aff'd 64 Fed. Appx. 838 (3d Cir. 2003). Accordingly, the §1983 official capacity claims against Defendants Brenner, Whitman and Barth shall be dismissed with prejudice. Inasmuch as the Plaintiff has asserted claims against Defendants Brenner and Whitman in their official capacities only, they shall both be dismissed entirely as parties to this action.

### B.  §1983 Claims Against Defendant City of York

Defendants argue that Plaintiff's complaint fails to state any cognizable §1983 municipal liability claims against Defendant City of York. It is well-established that a municipality cannot be held liable under 42 U.S.C. §1983 solely because it employs a constitutional tortfeasor. See Board of Commissioners of Bryan County v. Brown, 520 U.S. 397, 403 (1997). The Supreme Court has expressly rejected the application of strict *respondeat superior* liability to municipalities because "to adopt lesser standards of fault and causation would open municipalities to unprecedented liability under §1983." City of Canton v. Harris, 489 U.S. 378, 392 (1989).

The Supreme Court has held that "in enacting §1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind plaintiff's deprivation of federal rights." Brown, 520 U.S. at 400 (citing Monell v. New York City Dep't of Social

6

Svcs., 436 U.S. 658, 694 (1978)(emphasis in original).  Therefore, liability under §1983 may attach for a constitutional deprivation if the municipality itself caused the violations.  See Monell 436 U.S. at 691; Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

To establish municipal liability under §1983, a plaintiff must "identify a municipal 'policy' or 'custom' that caused plaintiff's injury."  Brown, 520 U.S. at 403; City of Canton, 489 U.S. at 388.  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Brown, 520 U.S. at 403 (citing Monell, 436 U.S. at 694).  However, "it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to a municipality.  The Plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Brown, 520 U.S. at 404.

For determining whether a municipality should be held liable under §1983, "deliberate indifference" is the relevant standard. "Deliberate indifference" is a

stringent standard of fault, requiring proof that a municipal actor consciously disregarded a known or obvious consequence of his or her action.  Moreover, a plaintiff must demonstrate that a municipal decision reflected deliberate indifference to the risk that a violation of a particular constitutional right would follow the decisions.  See Brown, 520 U.S. at 410-11.

In Brown, the respondent brought a §1983 claim for damages against Byran County, alleging that a county police officer used excessive force in arresting her, and that the county itself was liable for her injuries based upon its sheriff's hiring and training decisions.  The Third Circuit held that Byran County was not liable for the respondent's injuries, reasoning that the hiring of the officer was legal and that the sheriff did not authorize him to use excessive force.  The Third Circuit did not accept the respondent's argument that a single, facially lawful, hiring decision launched a series of events that ultimately caused a violation of federal rights. The Third Circuit instructed that "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Id. at 405.

Defendants argue that the City of York cannot be held liable for the actions of Sergeant Barth merely because Sergeant Barth warned Plaintiff not to enter onto

8

Rose Alley. The municipal policy or custom that Plaintiff essentially challenges is the City of York's assignment of extra duty police officers to the Planned Parenthood facility. Similarly to the challenged municipal action in <u>Brown</u>, the policy of assigning officers to Planned Parenthood is facially legal and Plaintiff is attempting to hold the municipality liable for an alleged injury caused to him by his interaction with Defendant Barth. The jurisprudence arising out of municipality liability cases within our Circuit has designed the "rigorous" standards of culpability and causation precisely to protect defendants like the City of York from allegations such as these. Plaintiff simply has not alleged, nor could he likely allege, that the City of York's decision to deploy extra officers to Planned Parenthood was a deliberate action *aimed* at depriving constitutional rights of others. In fact, according to the complaint the only action undertaken by the municipality was the policy regarding extra officers. (Complaint, ¶16). All of the other actions complained of by Plaintiff were undertaken by Defendant Barth. Plaintiff makes no allegation that by implementing the policy that the City of York disregarded a known risk that a violation of a particular constitutional right would follow the decisions. Accordingly, we find that the Plaintiff has not stated a claim upon which relief can be granted against the City of York under §1983, and the complaint shall be dismissed against it.

**C.     §1983 Claims Against Defendant Barth**

Section 1983 provides individuals with a cause of action for violation of federal law by state actors. See 42 U.S.C. § 1983. Section 1983 does not create substantive rights; instead it provides remedies for deprivation of rights elsewhere conferred in the Constitution or federal laws. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a §1983 claim, a plaintiff must demonstrate that (1) a violation of federal rights secured by the Constitution and the laws of the United States occurred and (2) that the alleged deprivation was committed by a person acting under color of state law. Gonzaga University v. Doe, 536 U.S. 273, 284-285 (2002); Nicini v. Morra, 212 F. 3d 798, 806 (3d Cir. 2000).

Plaintiff argues that Sergeant Barth violated his free speech, freedom of assembly and freedom of religion rights by restricting the exercise of those rights in the pubic by threatening Plaintiff with arrest if he entered Rose Alley against Sergeant Barth's orders. Plaintiff alleges that Sergeant Barth told him not to persist walking in Rose Alley or Plaintiff would be arrested. Plaintiff further alleges that Planned Parenthood personnel were freely able to access Rose Alley and that he was not. Plaintiff does not allege that Sergeant Barth told him to refrain from speaking his message or congregating with his fellow advocates, but alleges that Sergeant Barth threatened him with arrest for walking in Rose Alley solely because

of the views held by Plaintiff. If we assume that Plaintiff equates walking in Rose Alley with some manner of expression that is protected under the First Amendment, we are constrained to allow these claims to survive Defendant's 12(b)(6) Motion. Although it appears to us to be the thinnest of cases, Plaintiff has made at least a colorable claim against Sergeant Barth under §1983. This is a very close call, but to grant the Motion at this juncture would require us to resolve factual disputes in favor of Sergeant Barth, which we obviously cannot do.[1]

**CONCLUSION**:

Therefore, for the reasons hereinabove stated, we shall grant in part and deny in part the Defendants' Motion. All claims against Defendants Brenner, Whitman and the City of York shall be dismissed. The claims against Defendant Barth in his official capacity shall be dismissed. The claims against Defendant Barth in his individual capacity shall remain.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion to Dismiss (doc. 9) is GRANTED in part to the following extent:

    a. The complaint is DISMISSED with prejudice against

---

[1] We recognize, for example, that it is Sergeant Barth's position that he excluded Plaintiff from Rose Alley as a matter of public safety. However, Plaintiff argues that Sergeant Barth's stated reasons were pretextual, and that the actual reason for his exclusion was to prevent him from protesting.

>   Defendants Brenner, Whitman and City of York and the Clerk shall terminate these Defendants as parties to the action.
>
> b.  The complaint is DISMISSED with prejudice against Defendant Barth in his *official* capacity only.

2.  The Motion is DENIED in all other respects.

>   s/ John E. Jones III
>   John E. Jones III
>   United States District Judge