IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MCTERNAN, | : |
| | : |
| Plaintiff, | : |
| | :  Civil No. 4:06-cv-2132 |
| v. | : |
| | :  Judge John E. Jones III |
| SERGEANT RICHARD BARTH, | : |
| *York Police Department, in his* | : |
| *individual capacity* | : |
| | : |
| Defendant | : |

## **MEMORANDUM**

## **October 23, 2007**

Plaintiff John McTernan filed this § 1983 action against Defendant Sergeant Richard Barth, as well as the City of York and York's mayor and police commissioner.  McTernan alleges violations of his constitutional rights of free exercise of religion, speech, and assembly.  By an order of May 11, 2007, the Court dismissed McTernan's claims against York, the mayor, the police commissioner, and Barth in his official capacity.  (Doc. 24.)  Currently before the court is Sergeant Barth's motion for summary judgment on McTernan's claims against him in his individual capacity.  (Doc. 30.)  For the reasons set for below, the Court will grant Sergeant Barth's motion for summary judgment.

**I.     BACKGROUND**

The following facts are derived from the complaint and the briefs, exhibits, declarations, and other evidence submitted by the parties in support of and opposition to the current motion. These facts, and any reasonable inferences drawn therefrom, are viewed in the light most favorable to the non-moving party, McTernan. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Plaintiff John McTernan is a Christian, pro-life advocate who, for the last seven years, has traveled to the Planned Parenthood of Central Pennsylvania facility in the City of York to state his beliefs regarding abortion. (Def.'s Statement of Undisputed Material Facts ["SUF"] ¶ 17; Pl.'s Statement in Opposition ["SIO"] ¶ 17; McTernan Aff. ¶¶ 3-4.) These actions are motivated by McTernan's sincerely held religious beliefs. (McTernan Aff. ¶ 7.)

The Planned Parenthood facility is located on South Beaver Street in York between Hancock Street and Rose Alley. (SUF, SIO ¶¶ 18-19; McTernan Dep. at 15, Ex. 1.) Planned Parenthood's parking lot is located across Rose Alley from the facility. (McTernan Dep. at 15, Ex. 1.) Public sidewalks run the length of the facility from Hancock Street to Rose Alley and from the parking lot to Beaver Street. (SUF, SIO ¶ 18.) Rose Alley is less than 20 feet wide and is subject to two-way vehicular traffic. (SUF, SIO ¶ 19.) In addition to vehicles accessing the

Planned Parenthood parking lot, Rose Alley is also subject to traffic going to and from a printing business located further down the alley, including tractor-trailer trucks. (SUF, SIO ¶ 20; McTernan Dep. at 19, 40-41.) There is no posted speed limit in Rose Alley, nor are there signs restricting the direction of travel, the size of vehicles using the alley, or the hours during which vehicles may use the alley. (SUF, SIO ¶ 21; McTernan Dep. at 20-21.)

Pursuant to a contract between Planned Parenthood and the City of York, police officers are assigned to work overtime details at the Planned Parenthood facility. (SUF, SIO ¶ 3.) Sergeant Barth has worked this overtime detail on at least a dozen occasions. (*Id.*)

On June 29, 2005, Sergeant Barth worked an overtime detail at the Planned Parenthood facility. (SUF, SIO ¶ 4.) On that date, McTernan and another protester were located in Rose Alley when a vehicle traveling down Rose Alley toward Beaver Street swerved toward them and passed at a close distance. (SUF, SIO ¶ 22.)

On September 28, 2005, Sergeant Barth again worked an overtime detail at the Planned Parenthood facility. (SUF, SIO ¶ 7.) On that date, Sergeant Barth instructed pro-life protestors and Planned Parenthood personnel that, because of safety concerns, it was permissible for individuals to travel through Rose Alley, but

that they could not stand, linger, or remain in Rose Alley.[1]  (SUF, SIO ¶¶ 8, 25-26; Barth Dep. at 13-14; Barth Decl. ¶ 8; McTernan Aff. ¶ 10.)  Sergeant Barth referenced the June 29, 2005 incident as an example of his safety concern.  (SUF, SIO ¶¶ 25, 26.)  Because of Sergeant Barth's instructions, McTernan did not enter the alley that day.  (McTernan Aff. ¶ 14.)

McTernan was threatened with possible arrest should he violate Sergeant Barth's instructions.  (SIO ¶ 12; McTernan Aff. ¶ 13.)  McTernan was not arrested on September 28, 2005 (SUF, SIO ¶ 28) and has not been threatened with arrest by Sergeant Barth since that date (SUF, SIO ¶ 30.)  After September 28, 2005, McTernan continued to go to the Planned Parenthood facility to express his views on abortion.  (SUF, SIO ¶ 29.)

---

[1] Defendant states that Sergeant Barth "pulled both groups together" and gave his instructions regarding walking and standing in Rose Alley.  SUF ¶ 8.  Plaintiff responds that the video submitted as Exhibit B to his opposition brief "does not depict pulling groups together but simply telling the pro-life group that they could not walk or stand in the alley."  SIO ¶ 8.  In fact, however, the video depicts Sergeant Barth giving his instructions regarding walking and standing in the alley to both the pro-life protestor filming the video and on-looking Planned Parenthood personnel.  Pl.'s Ex. B at 00:05-01:15.  In addition, the video depicts Sergeant Barth moving toward other individuals, including Planned Parenthood personnel, stating that he is going to "spread the word" and also indicates that Sergeant Barth gave instructions regarding walking and standing in the alley to both groups.  Pl.'s Ex. B at 01:11-01:15, 02:03-02:06, 03:03-03:11.  Further, the video does not purport to depict all of the events at issue, but rather, less than thirteen minutes selected by the Plaintiff.  Based on Plaintiff's exhibit, there is no dispute that Sergeant Barth made his statements to "both groups."  Whether Sergeant Barth literally "pulled both groups together" is not material to this motion.

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the underlying facts and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact-finder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. 242, 247-48 (1986).

## III.   DISCUSSION

McTernan brings this action pursuant to 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but a means of redress for violations of federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). McTernan alleges that Sergeant Barth violated his First Amendment rights of free exercise of religion, speech, and assembly. McTernan seeks a declaratory

judgment, nominal and compensatory damages, injunctive relief, and punitive damages. Sergeant Barth disputes the merits of these issues and raises the defense of qualified immunity. The Court will address each of these issues in turn.

### A.     Free Exercise of Religion

McTernan first argues that Sergeant Barth's directive not to stand or linger in Rose Alley violates his First Amendment right to the free exercise of religion. The Free Exercise Clause of the First Amendment, which is applicable to state action pursuant to the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law ... prohibiting the free exercise [of religion]." The Free Exercise Clause forbids any regulation of religious beliefs as such. *Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) and *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872, 877 (1989)).

The free exercise of religion, however, often includes not only belief but also religiously motivated conduct. *Smith*, 494 U.S. at 877. In this case, McTernan's actions at the Planned Parenthood facility are motivated by sincerely-held religious beliefs. When religiously motivated conduct comes into conflict with a law or government action, the analysis of a free exercise claim depends on the nature of

7

the challenged law or government action. *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002).

If government action is "neutral" and "generally applicable," and burdens religious conduct only incidentally, the Free Exercise Clause offers no protection. *Blackhawk*, 381 F.3d at 209; *Tenafly*, 309 F.3d at 165.  On the other hand, if government action is not neutral and generally applicable, strict scrutiny applies, and the government action violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest.  *Id.*  Government action is not neutral and not generally applicable if it burdens religious conduct because of its religious motivation or if it burdens religiously motivated conduct but exempts substantial comparable conduct that is not religiously motivated.  *Church of the Lukumi Babalu Aye*, 508 U.S. at 533; *Blackhawk*, 381 F.3d at 209; *Tenafly*, 309 F.3d at 165.

In this case, Sergeant Barth's directive prohibiting standing or lingering in the alley was neutral and generally applicable.  Sergeant Barth gave these instructions to both pro-life protestors and Planned Parenthood personnel.  Sergeant Barth gave these instructions because of safety concerns about vehicular traffic in the alley. No evidence indicates that Sergeant Barth prohibited standing in the alley because of McTernan's religious beliefs.  To the contrary, the evidence indicates that

Sergeant Barth prohibited standing in the alley for any reason, be it religious opposition to abortion, secular opposition to abortion, support for abortion, or any other reason. McTernan alleges that "Planned Parenthood personnel ... were permitted to stand in the alley," Compl. ¶ 28; however, McTernan offers no evidence to support this allegation. In fact, McTernan admits that "[f]or the most part, people listened to Sgt. Barth's instructions on September 28, 2005 with respect to safety in the alley." SUF, SIO ¶ 10. McTernan's unsupported allegation does not create a genuine issue of material fact to preclude summary judgment. Fed. R. Civ. P. 56(e); *Jones*, 214 F.3d at 407.

Further, Sergeant Barth's instructions only incidentally burdened McTernan's conduct. McTernan admits that the Planned Parenthood facility is bordered on two sides by public sidewalks in which he is free to engage in his religious conduct. (SUF, SIO ¶ 18; McTernan Dep. at 15-18.) McTernan admits that Sergeant Barth did not prohibit or prevent him or any member of his group from carrying signs, distributing literature, expressing their views, or otherwise engaging in religiously motivated conduct on these sidewalks or in any location other than the alley. (SUF, SIO ¶¶ 13-16; McTernan Dep. at 35-37.) McTernan retained substantial opportunity to engage in his religiously motivated conduct.

Because Sergeant Barth's instructions were neutral and generally applicable,

and burdened McTernan's religious conduct only incidentally, Sergeant Barth is entitled to summary judgment on McTernan's free exercise claim. *Tenafly*, 309 F.3d at 165.

McTernan argues that strict scrutiny applies, regardless of whether Sergeant Barth's actions were neutral and generally applicable, because he has combined his free exercise claim with other First Amendment claims, namely speech and assembly. Pl.'s Opp. at 14. The Supreme Court in dictum in *Smith* suggested that strict scrutiny may still apply to neutral and generally applicable government action that implicates not only the Free Exercise Clause but also other constitutional protections. 494 U.S. at 881. Questions about the existence and application of such a "hybrid rights" exception have created varying interpretations across federal courts. *See Green v. City of Philadelphia*, C.A. No. 03-1476, 2004 WL 1170531 at *5-7 (E.D. Pa. May 26, 2004) (collecting cases). The Third Circuit has not definitively adopted or rejected a hybrid rights exception, but has suggested that such a claim exists. *Blackhawk*, 381 F.3d at 207 (stating that in *Smith* the Supreme Court recognized and "did not overrule prior decisions in which 'hybrid claims' ... had prevailed against neutral, generally applicable laws"); *Tenafly*, 309 F.3d at 165 n.26 (stating "[s]trict scrutiny may also apply when a neutral, generally applicable law incidentally burdens rights protected by the Free Exercise Clause in conjunction

with other constitutional protections, such as freedom of speech and of the press, or the rights of parents ... to direct the education of their children," but finding no such claim at issue). Because the Third Circuit has recognized at least the possibility of a hybrid rights claim, the Court will address the merits of such a claim in this case.

As an initial matter, even those courts that have explicitly recognized a hybrid rights claim require a "colorable showing of infringement of recognized and specific constitutional rights" to trigger strict scrutiny.[2] *See, e.g.*, *Miller v. Reed*, 176 F.3d 1202, 1207-08 (9th Cir. 1999); *Swanson ex rel. Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 700 (10th Cir. 1998); *see also Green*, 2004 WL 1170531 at *6 (collecting cases). Because, as set forth below, McTernan has not made out colorable claims for violation of his rights to free speech and assembly, any hybrid rights claim must also fail. *See Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 Fed. Appx. 70, 75 (3d Cir. 2004) (affirming denial of injunction on hybrid rights because plaintiffs were unable to show likelihood of success on other constitutional claims).

Further, should strict scrutiny apply, Sergeant Barth's instructions do not

---

[2] In his opposition brief, McTernan incorrectly attributes this quotation to the Supreme Court's decision in *Smith*. (Pl.'s Opp. at 14.) No such language appears in that decision.

violate McTernan's free exercise rights because they were narrowly tailored to serve a compelling government interest. Sergeant Barth gave his instructions regarding standing and lingering in the alley because of concerns about safety. SUF, SIO ¶ 9. McTernan, correctly, does not deny that the government has a compelling interest in public safety. *See Schenck v. Pro-Choice Network Of W. N.Y.*, 519 U.S. 357, 375-76 (1997) (finding injunction supported by "the significant governmental interest in public safety"); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994) (agreeing that the government "has a strong interest in ensuring the public safety and order [and] in promoting the free flow of traffic on public streets and sidewalks...").

Instead, McTernan alleges that the asserted interest in safety here is mere pretext.[3] (Pl.'s Opp. at 15-16.) The evidence presented, however, does not support this allegation. McTernan admits that the small alley is subject to two-way traffic, including large trucks, coming to and from Planned Parenthood and a neighboring business. (SUF, SIO ¶¶ 18-20.) McTernan himself emphasizes the June 29, 2005 incident where he and another protestor were nearly struck by a

---

[3] While McTernan alleges that Sergeant Barth's interest in safety is pretextual, he does not explicitly allege what the "true" reasons for Sergeant Barth's instructions were. Presumably, McTernan means to argue that Sergeant Barth's instructions were motivated by a desire to stifle his religious conduct or expression. There is no evidence, however, to support any claim that Sergeant Barth's instructions were motivated by McTernan's religious beliefs or the content of his expression.

vehicle in the alley. (Compl. ¶¶ 18-20; Pl.'s Ex. D.) Sergeant Barth explicitly referenced this incident as supporting his concerns regarding safety. (SUF, SIO ¶¶ 25, 26.) In his deposition, McTernan relates yet another incident where a fellow protestor was nearly struck by an 18-wheel tractor-trailer in the alley. (McTernan Dep. at 40-41.) Even the video submitted by McTernan in opposition to the motion depicts a moment where the protestor filming the video exclaims "watch out" as a vehicle turns into the alley directly behind McTernan. (Pl.'s Ex. B at 04:32-04:38.) The evidence clearly substantiates Sergeant Barth's asserted interest in safety, and McTernan has submitted no evidence to support his allegation that this interest is pretext.

     Sergeant Barth's instructions were narrowly tailored to serve his significant interest in safety. All individuals were instructed that they could travel through the alley, but that they could not stand or linger in the alley where vehicular traffic would travel. (SUF, SIO ¶ 8.) McTernan and his fellow protestors were not restricted in any way from engaging in their religiously motivated conduct on any of the public sidewalks that border the Planned Parenthood facility. (SUF, SIO ¶¶ 13-16, 18.) Sergeant Barth gave instructions that were necessary to address the compelling and demonstrated interest in safety, but which preserved ample space and opportunity for McTernan to engage in his religious conduct. Sergeant Barth

therefore did not violate McTernan's First Amendment right to free exercise and is entitled to summary judgment on that claim.

### B.     Free Speech and Assembly

McTernan also argues that Sergeant Barth's directive not to stand or linger in Rose Alley violates his First Amendment rights to free speech and assembly.[4] "The Supreme Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Paff v. Kaltenbach*, 204 F.3d 425, 431 (3d Cir. 2000) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).  Under this analysis, "[t]he extent to which the government may limit activity protected by the First Amendment depends largely on the locale where the speech or conduct takes place." *Int'l Soc'y for Krishna Consciousness, Inc. v. N.J. Sports & Exposition*

---

[4] McTernan states that he is not making an expressive association claim, *see Boy Scouts of America v. Dale*, 530 U.S. 640, 647-48 (2000) (explaining that implicit in the protections of the First Amendment is a right to associate with others for First Amendment purposes); rather, McTernan asserts only his "right to physically assemble." (Pl.'s Opp. at 12.)  Because the rights of free speech and peaceful assembly are so closely related, the same analysis applies to both.  *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (discussing forum analysis in terms of both speech and assembly); *Thomas v. Collins*, 323 U.S. 516, 530 (1945) (stating rights of speech and assembly, "though not identical, are inseparable. They are cognate rights"); *Walker-Serrano ex rel. Walker v. Leonard*, 168 F. Supp. 2d 332, 347 (M.D. Pa. 2001) (stating "the right to assemble is intertwined with the right to free speech").

*Auth.*, 691 F.2d 155, 159 (3d Cir. 1982).

The Supreme Court has identified three types of fora: the traditional public forum, the designated public forum, and the nonpublic forum. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998). Traditional public fora are defined by the objective characteristics of the property, such as whether the location has long been open to expressive activity. *Id.* Designated public fora are created only where the government intentionally opens a nontraditional public forum for public discourse. *Id.* Other government properties are either nonpublic fora or not fora at all. *Id.*

In traditional and designated public fora, limits on First Amendment activity are subject to strict scrutiny, meaning that to be constitutional such limits must be content-neutral, be narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication of information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). In contrast, limits on First Amendment activity in nonpublic fora are constitutional if they are reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view." *United States v. Kokinda*, 497 U.S. 720, 730 (1990).

In this case, the parties seem to agree that Rose Alley is a traditional public

forum.[5] (Def.'s Br. at 8-9; Pl.'s Opp. at 12-13.) Thus, Sergeant Barth's actions must be content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication of information. *Ward*, 491 U.S. at 791. "The principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.* The government actor's purpose is the controlling consideration; "[g]overnment regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Id.* Here, Sergeant Barth's actions were content-neutral. Sergeant Barth instructed all individuals not to stand or linger in the alley because of his concern for public safety. No evidence has been presented demonstrating that Sergeant Barth's actions were motivated by disagreement with the content of McTernan's expressive activity.

As discussed above, Sergeant Barth's instructions were narrowly tailored to

---

[5] Although in general, "streets, sidewalks, and parks, are considered, without more, to be public forums," *United States v. Grace*, 461 U.S. 171, 177 (1983), it is conceivable that a small alley used only to travel from a parking lot to a business is more akin to the streets and sidewalks that courts have found to be nonpublic fora. *See, e.g.*, *Kokinda*, 497 U.S. at 727-30; *Paff*, 204 F.3d at 430-33; *McTernan v. City of York*, 486 F. Supp. 2d 466, 471-72 (M.D. Pa. 2007); *Sabatini v. Reinstein*, C.A. No. 99-2393, 2000 WL 1052103 at *3 (E.D. Pa. July 21, 2000). Nonetheless, because Sergeant Barth's actions pass muster under the higher scrutiny applicable to traditional public fora, the Court will base its analysis on the parties' agreement that Rose Alley is a public forum.

serve a compelling interest in safety. Sergeant Barth's significant safety concerns are clearly supported by the evidence in this case, and his instructions were designed to do what was necessary to address those concerns, but not more. In this regard, as also noted above, Sergeant Barth's instructions left open ample alternative channels for communication. McTernan and his fellow protestors were unrestricted in their ability to assemble and express their views on any of the public sidewalks surrounding the Planned Parenthood facility. Because Sergeant Barth's instructions were content-neutral, narrowly tailored to serve a compelling interest, and left open ample channels of communication, Sergeant Barth is entitled to summary judgment on McTernan's speech and assembly claims.

### C. Qualified Immunity

Sergeant Barth has raised the defense of qualified immunity. Because, as set forth above, Sergeant Barth is entitled to summary judgment on McTernan's claims that Sergeant Barth violated his constitutional rights, the Court need not proceed with a qualified immunity analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

### D. Injunctive Relief and Punitive Damages

McTernan seeks both injunctive relief and punitive damages for his

constitutional claims. Because Sergeant Barth is entitled to summary judgment on those claims, McTernan is not entitled to an injunction. *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 307 n.7 (3d Cir. 2004) ("Of primary importance, a party seeking an injunction must show that there is some legal transgression that an injunction would remedy. Put differently, a party seeking a permanent injunction must succeed on the merits.").

Similarly, because Sergeant Barth did not violate McTernan's constitutional rights, his actions cannot constitute the basis for punitive damages. *See Keenan v. City of Philadelphia*, 983 F.2d 459, 470 (3d Cir. 1992) (stating "the punitive damage remedy must be reserved, we think, for cases in which the defendant's conduct amounts to something *more* than a bare violation justifying compensatory damages or injunctive relief" (emphasis added)).

## IV.   CONCLUSION

For the foregoing reasons, Sergeant Barth's motion for summary judgment shall be granted. An appropriate order shall issue.